UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| GLENN B., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:21 CV 609 JMB |
| | ) | |
| KILOLO KIJAKAZI,[1] | ) | |
| Acting Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court for review of an adverse ruling by the Social Security Administration. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

## Procedural History

On November 28, 2018, Glenn B. (hereinafter "Plaintiff") filed applications for disability insurance benefits and supplemental security income pursuant to the Social Security Act (herein after "the Act"). His claims were denied initially on April 25, 2019. Plaintiff requested an administrative hearing, and on February 5, 2020, Plaintiff appeared, with counsel, for a hearing before an Administrative Law Judge (ALJ). On March 5, 2020, the ALJ issued a written decision finding Plaintiff not under a disability pursuant to the Act. On February 3, 2021, the Appeals Council issued a notice that it had denied Plaintiff's request for review. Accordingly, the ALJ's decision stands as the Commissioner's final decision.

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Kilolo Kijakazi is substituted for Commissioner Andrew Saul as the defendant in this suit.

**Evidence Before the ALJ**

I.      **Disability and Function Reports and Hearing Testimony**

In a Disability Report-Adult (Tr. 205-13), Plaintiff listed his medical conditions as epilepsy, knee pain, degenerative arthritis in neck, shoulders and back, bone spurs with pinched nerves in neck and back of leg, possible gout, depression and anxiety, and high blood pressure. Plaintiff represented that he stopped working in July 2015 due to his conditions.  He identified his work history as owning an automotive machine shop from 1997 to 2015, and he listed the job tasks he performed daily.  He also provided a summary of his recent medical treatment history.

In a Function Report-Adult (Tr. at 214-24), Plaintiff described how his conditions limited his ability work, noting that "walking & standing pretty much all day lifting and bending over with things in my hands is making it very hard." (Id. at 214)  Plaintiff described his daily activities, which included preparing meals, watching television, using the telephone and a laptop, and reading.  Plaintiff completed basic household chores, but he indicated that he could not perform outdoor chores.  Plaintiff represented that he could drive a car and shop, pay bills, and manage money.  He indicated that, since his condition, it was harder to read and concentrate.  Plaintiff did not have problems getting along with family or authority figures, could follow written and spoken instructions, and he was fair at handling stress and fair to good at handling changes in routines. Plaintiff indicated that he had problems lifting, squatting, bending, standing, reaching walking, stair climbing, concentrating, understanding, and using his hands.  He represented he can only lift 10 pounds, and that he had pain with squatting, bending, and standing.  He indicated he can walk about 200 feet and would then need to rest 3-4 minutes.

At the February 5, 2020 hearing before an Administrative Law Judge (ALJ), Plaintiff testified along with Jenifer Larue, M.Ed., C.R.C., an impartial Vocational Expert (VE).

Plaintiff testified that he was self-employed and rebuilt automotive engines.  Plaintiff initially testified that he stopped working in 2015, but he later testified that he continued to perform similar work part-time until 2018.  He also explained that he made money selling assets.

Plaintiff testified that back pain kept him from continuing to work, notably pain in both his lumbar and cervical spine.  He self-rated his pain as a six or seven (out of ten) for about two years.  He testified that walking and movement made his pain worse, and that getting off his feet reduced or relieved his pain.  He did not use a cane, walker, wheelchair, or brace.  The ALJ reviewed Plaintiff's medications, including hydrocodone, which Plaintiff explained he used about five days per week.  Plaintiff denied seeing any mental health professionals.

Plaintiff testified that his primary physician was Dr. Steven Crawford, who he sees "mainly for the high blood pressure, cholesterol and that sort of thing."  (Tr. at 58)  He further testified that he saw Dr. Sandra Hoffman to help with pain.  Plaintiff testified about his recent treatment options that involved Dr. Charles Wetherington, and that he told Dr. Wetherington he needed to think about surgery because he had not been to pain management yet, and that he wanted to try pain management injections first.  Plaintiff testified that, as of the administrative hearing, he had insurance coverage through Medicaid.

The ALJ questioned Plaintiff about a page of handwritten notes, that appeared to be information needed for a disability claim, and that were included with Dr. Hoffman's treatment records.  (See Tr. at 53-54)  Plaintiff acknowledged that the notes were in his handwriting, and he provided the notes "to make sure that I got, you know, there was some problems with her getting information about, you know, the truth information about my condition…."  (Id. at 54)  When asked where Plaintiff got the information in the notes, Plaintiff testified, "It's what I was feeling." (Id. at 55)

Plaintiff testified that he goes to bed at 7 p.m. and gets up at 8:30 a.m.  He prepares his own meals, which he describes as "frozen pizza, sandwich."  (Tr. 61)  He is able to dress and bathe himself and attend to his basic hygiene.  He denied mopping or vacuuming or doing laundry, but he could wash dishes.  He testified that the most weight he could lift and carry was 10 pounds and that he could walk 50 feet.  He pays someone to cut the grass.  He shops at the grocery store once or twice per week, but he has to take rests.  He spends his days reading, doing crosswords, and watching television.  He denies using social media.

The VE, Jennifer Larue, testified that Plaintiff's past work in engine repair was heavy to very heavy in terms of exertion, and skilled at SVP 6.  The VE explained that Plaintiff's past work would have transferable skills to the light exertional level, namely mechanical fabrication, and would include jobs such as gas meter mechanic, bicycle assembler, and meter repair.  The ALJ posed a series of hypothetical questions to the VE, with the fourth hypothetical asking the VE to assume an individual of Plaintiff's age, education, and past work, who could perform work at the light exertional level, except that he can occasionally claim ramps and stairs, occasionally climb ladders, ropes, and scaffolds, and can frequently stoop.  The VE opined that such a person could perform the jobs of gas meter mechanic, bicycle assembler, and meter repair.

## II.   **Relevant Medical and Opinion Evidence**

As relevant to the instant matter, Plaintiff received medical treatment from several providers.  Dr. Steven Crawford, D.O., was Plaintiff's primary care physician during the time period in question.  (See Tr. at 381-91)  Dr. Sandra Hoffman, M.D., treated Plaintiff's back issues.  (See id. at 317-27, 341-57, 374-80, 394-99)  Dr. Hoffman also submitted a Medical Statement of Ability to Do Work-Related Activity (Physical) and a Medical Statement of Ability to Do Work-Related Activity (Mental).  (See id. Tr. 362-71)  Finally, upon referral from Dr. Hoffman, on

4

January 28, 20220, Plaintiff was seen at SSM Neurosurgeons South by Nurse Practitioner Danielle Thomas, and Dr. Charles Wetherington, M.D.

The record also includes administrative medical findings from Dr. James Schell, M.D., a non-examining, state-agency physician. (See Tr. at 86-87) Dr. Schell opined that Plaintiff could occasionally lift or carry 50 pounds, frequently lift or carry 25 pounds, stand or walk about 6 hours in an 8-hour workday, and had no other postural, manipulative, visual, communicative, or environmental limitations. (Tr. at 86) As the ALJ interpreted this opinion, Dr. Schell found that Plaintiff retained the functional capacity to perform a full range of work at the medium exertional level.

Other pertinent medical and opinion evidence is discussed below.

## Summary of ALJ's Decision

In a decision dated March 5, 2020, the ALJ applied the required five-step inquiry and concluded that, although Plaintiff had not engaged in substantial gainful activity since November 29, 2018, he was not disabled under the Act.

The ALJ found Plaintiff to have the severe impairments of sacroiliitis, degenerative disc disease, and obesity. The ALJ found Plaintiff's other conditions as either non-severe or not medically determinable. The ALJ concluded that none of Plaintiff's impairments, either singly or in combination, equaled the severity of any Listing. The ALJ concluded that Plaintiff retained the residual functional capacity (RFC) "to perform light work, as defined in 20 CFR 404.1567(b) and 416.967(b) except he can occasionally climb ladders, ropes, scaffolds, ramps, and stairs, and he can frequently stoop." (Tr. at 29)

In assessing Plaintiff's RFC, the ALJ considered Plaintiff's self-described symptoms and limitations, as well as the "longitudinal case record." (See, e.g., id. at 30). The ALJ concluded

that, although "[Plaintiff's] medically determinable impairments could reasonably be expected to cause some of [his] alleged symptoms[, Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the records as explained in [the] decision."  (Id. at 30)  The ALJ explained that Plaintiff's "statements about the intensity, persistence, and limiting effects of his symptoms [were] not reasonably consistent with the objective physical examination findings in the longitudinal case record."  (Id.)

Regarding imaging, the ALJ acknowledged that MRIs of Plaintiff's cervical and lumbar spine showed "significant degenerative disc disease, but the objective examination results [did] not generally reflect [Plaintiff] to exhibit any abnormalities of sensation, muscle tone or motor function, or any other overt deficits that would affect the use of his upper or lower extremities." (Id.)  The ALJ noted that, in January 2020, Dr. Wetherington (a neurosurgeon) examined Plaintiff, with examination results containing "only minimal abnormalities."  (Id. at 31)

The ALJ then summarized Plaintiff's relevant treatment records with his primary care physician, Dr. Crawford, as well as his multiple visits with Dr. Hoffman.  The ALJ also considered imaging records, including x-ray and MRI records.  After considering the medical records, the ALJ explained that, in determining Plaintiff's RFC he "relied significantly on the findings of Dr. Wetherington, who is a neurosurgery specialist who had the opportunity to examine" Plaintiff shortly before the administrative hearing.  (Tr. at 32)  The ALJ noted that Dr. Wetherington "observed [Plaintiff] to have full strength and sensation, with a negative response to straight leg raise testing and no myelopathic findings…. The other physical examination findings in the record

have also consistently shown [Plaintiff] to exhibit no neurological abnormalities or any deficits in extremity strength or sensation…." (Id.)

Regarding pain, the ALJ noted that she considered Plaintiff's symptoms in accordance with the regulations, and that his "course of treatment [did] not support a conclusion that he [was] unable to perform all competitive work activity, or that he [was] limited to performing only sedentary work activity." (Tr. at 33)  The ALJ again referred to Dr. Wetherington's evaluation, commenting that he recommended Plaintiff receive "bilateral sacroiliac joint injections, a relatively conservative recommendation." (Id.)  The ALJ also considered that Plaintiff had "not required any inpatient or emergent treatment" since his onset date, and he did not need an "inordinate or excessive number of outpatient appointments." (Id.)  Finally, the ALJ considered the note that Plaintiff took to his last appointment with Dr. Hoffman.  The ALJ treated the note as part of Plaintiff's subjective allegations and found them inconsistent with the objective findings of Dr. Hoffman and the other medical providers of record.  (See id.)

The ALJ's decision also addresses the medical opinion evidence in the record from state-agency, non-examining physician Dr. Schell, and treating physician Dr. Hoffman.  The ALJ declined to defer to or giving any controlling weight to these opinions.  The ALJ found Dr. Schell's opinion that Plaintiff retained the RFC to perform the full range of medium work "not fully persuasive," because Dr. Schell's conclusions relied on evidence as of April 2019, and were "no longer wholly consistent with the remainder of the evidence as a whole," specifically noting that Dr. Schell did not have access to later MRI records.  (Tr. at 33)

The ALJ recognized that Dr. Hoffman's opinion "endorsed in significant part that [Plaintiff] could only lift 10 pounds occasionally, and could only sit, stand, and walk for a few minutes each in a full work day," and that Plaintiff "could only occasionally (at most) use his upper

extremities for any manipulative activities," and "only occasionally operate foot controls bilaterally and never perform any postural activities." (Tr. at 33) And the ALJ further recognized that Dr. Hoffman provided support for her opinion with narrative comments. Nonetheless, the ALJ concluded that Dr. Hoffman's comments and opinion were inconsistent "with the remainder of the medical evidence in the case record, including Dr. Hoffman's own treatment notations." (Tr. at 33-34) The ALJ explained that "Dr. Hoffman's own physical examination findings did not generally reflect [Plaintiff] to have exhibited any gross focal neurological deficits or any abnormalities involving any of his extremities." (Id. at 34) And the ALJ again noted that Dr. Wetherington's examination in January 2020, showed Plaintiff "to have full strength and intact sensation, with no indications of any myelopathy." (Id.)

Based on the VE's testimony and the regulations, the ALJ concluded that Plaintiff could not return to his past work, that he was an individual of "advanced age" as of his onset date, and that he had acquired work skills of SVP 6, including the skill of mechanical fabrication. Also based on the VE's testimony, the ALJ found that Plaintiff retained the RFC to perform several representative jobs, including bicycle assembler, gas meter mechanic, and meter repairer.

## Standard of Review and Legal Framework

To be eligible for disability benefits, plaintiff must prove that he is disabled under the Act. See Baker v. Sec'y of Health & Human Servs., 955 F.2d 552, 555 (8th Cir. 1992); Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c (a)(3)(A). A claimant will be found to have a disability "only if his physical or mental impairment

or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The Social Security Administration has established a five-step process for determining whether a person is disabled. See 20 C.F.R. § 404.1520; Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009).  Steps one through three require the claimant to prove (1) he is not currently engaged in substantial gainful activity, (2) he suffers from a severe impairment, and (3) his disability meets or equals a listed impairment.  Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009); see also Bowen, 482 U.S. at 140-42 (explaining the five-step process).  If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.  Pate-Fires, 564 F.3d at 942.  "Prior to step four, the ALJ must assess the claimant's residual functional capacity (RFC), which is the most a claimant can do despite h[is] limitations." Moore, 572 F.3d at 523 (citing 20 C.F.R. § 404.1545(a)(1)).  At step four, the ALJ determines whether claimant can return to his past relevant work, "review[ing] [the claimant's] [RFC] and the physical and mental demands of the work [claimant has] done in the past."  20 C.F.R. § 404.1520(e).  The burden at step four remains with the claimant to prove his RFC and establish that he cannot return to his past relevant work.  Moore, 572 F.3d at 523; accord Dukes v. Barnhart, 436 F.3d 923, 928 (8th Cir. 2006); Vandenboom v. Barnhart, 421 F.3d 745, 750 (8th Cir. 2005).  If the ALJ holds at step four that a claimant cannot return to past relevant work, the burden shifts at step five to the Administration to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy.  Banks v. Massanari, 258 F.3d 820, 824 (8th Cir. 2001); see also 20 C.F.R. § 404.1520(f).

The Court's role on judicial review is to determine whether the ALJ's finding are supported by substantial evidence in the record as a whole. <u>Pate-Fires</u>, 564 F.3d at 942.  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Biestek v. Berryhill</u>, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high."  <u>Id.</u>  Stated another way, substantial evidence is "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." <u>Juszczyk v. Astrue</u>, 542 F.3d 626, 631 (8th Cir. 2008); <u>see also</u> <u>Wildman v. Astrue</u>, 596 F.3d 959, 965 (8th Cir. 2010) (same).  In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the ALJ's decision.  <u>See</u> <u>Julian v. Colvin</u>, 826 F.3d 1082, 1086 (8th Cir. 2016).

The Eighth Circuit has repeatedly emphasized that a district court's review of an ALJ's disability determination is intended to be narrow and that courts should "defer heavily to the findings and conclusions of the Social Security Administration."  <u>Hurd v. Astrue</u>, 621 F.3d 734, 738 (8th Cir. 2010) (quoting <u>Howard v. Massanari</u>, 255 F.3d 577, 581 (8th Cir. 2001)).  Despite this deferential stance, a district court's review must be "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision."  <u>Beckley v. Apfel</u>, 152 F.3d 1056, 1059 (8th Cir. 1998).  The district court must "also take into account whatever in the record fairly detracts from that decision."  <u>Id.</u>; <u>see also</u> <u>Stewart v. Sec'y of Health & Human Servs.</u>, 957 F.2d 581, 585-86 (8th Cir. 1992) (setting forth factors the court must consider).  Finally, a reviewing court should not disturb the ALJ's decision unless it falls outside the available "zone of choice" defined by the evidence of record.  <u>Buckner v. Astrue</u>, 646 F.3d 549, 556 (8th Cir. 2011).  A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance.

Id.; see also McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and [the court] may have reached a different outcome").

### Discussion

In his Brief [ECF No. 15], Plaintiff presents three issues for review.  First, Plaintiff argues that the ALJ did not properly evaluate the medical opinion evidence.  Second, and relatedly, he argues that the ALJ's erred in assessing his subjective/self-described limitations because of the alleged opinion evidence error, and because the ALJ failed to consider his strong work history. And third, he argues that his case must be remanded because the ALJ and Appeals Council members derive their authority from the Commissioner of Social Security and the relevant Commissioner was not constitutionally appointed.

### I.      Dr. Hoffman's Opinion

Plaintiff contends that the ALJ failed to properly assess the medical opinion evidence. According to Plaintiff, his treating physician, Dr. Hoffman, provided an MSS with limitations, that if accepted, would limit Plaintiff to less than sedentary work and, therefore, would direct a finding of disability as a matter of law.  [ECF No. 15, Social Security Brief at 5-7]  The ALJ found Dr. Hoffman's opinion not persuasive because it was contradicted with her own treatment notes and inconsistent with other record evidence.

The ALJ's decision references and considers two medical opinions.  First, the ALJ considered the opinion of Dr. Schell, the state agency, non-examining physician.  Second, the ALJ considered Dr. Hoffman's MSS, which was dated June 2019.  Plaintiff filed his applications after

11

March 27, 2017.  Accordingly, the Court applies the new regulations regarding opinion evidence.

See 20 C.F.R. § 404.1520c.  Pursuant to these regulations,

> "an ALJ is no longer required to 'defer to give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [claimant's] medical sources....'  Instead, the ALJ must evaluate the persuasiveness of such opinions by considering five factors:  supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict the opinion....   The most important factors are supportability and consistency."

Douglas K. v. Kijakazi, No. 4:21 CV 107 JAR, 2022 WL 1553903, at *5 (E.D. Mo. May 17, 2022) (quoting § 404.1520c(a)).  The ALJ's written decision demonstrates that she was aware of and followed these new regulations.  (See Tr. at 33)  Plaintiff's brief only challenges the ALJ's consideration of Dr. Hoffman's MSS.

Dr. Hoffman found that Plaintiff could only occasionally lift and carry up to 10 lbs., and noted, among other things, that x-rays showed significant disc disease.  (Tr. at 362)  Dr. Hoffman also found that Plaintiff could sit or stand for five minutes, and could walk less than five minutes, total, in an 8-hour workday.  Dr. Hoffman indicated that Plaintiff would be capable of performing no activity during the rest of a workday, and that Plaintiff was "fully disabled."  (Id. at 363)  Dr. Hoffman opined that Plaintiff could occasionally use his hands for all activities except pushing/pulling, and he could occasionally use his feet to operate foot controls.  As for postural limitations, Dr. Hoffman opined that Plaintiff could never climb stairs, ramps, ladders or scaffolds, nor could he ever balance, stoop, kneel, crouch, or crawl.  She noted no visual and hearing impairments.  As for environmental limitations, Dr. Hoffman indicated that Plaintiff could never be exposed to unprotected heights, moving mechanical parts, but could occasionally operate a motor vehicle and work in humidity and wetness.  Dr. Hoffman reported that the limitations in her MSS had been in place since July 2015, and would last for at least 12 consecutive months.  The

MSS Dr. Hoffman submitted was primarily in a check-the-box format, but she also included handwritten comments, which she repeated throughout the form.

The ALJ concluded that Dr. Hoffman's MSS was not consistent with the other medical evidence in the record and her own treatment notes.  The ALJ noted that Dr. Hoffman's "physical examination findings did not generally reflect [Plaintiff] to have exhibited any gross focal neurological deficits or any abnormalities involving his extremities."  (Tr. at 34)  And the ALJ noted that a later examination by Dr. Wetherington assessed Plaintiff "to have full strength and intact sensation, with no indication of any myelopathy."  The ALJ concluded that the "longitudinal examination findings in the record support [the ALJ's RFC] rather than the excessive limitations that Dr. Hoffman opined to be present."  (Id.)

The ALJ's decision acknowledges and adheres to the most recent regulations concerning opinion evidence.  But Plaintiff contends that Dr. Hoffman's opinion is both consistent with, and supported by, the evidence of record.  Plaintiff references, for example, 2018 imaging that showed disc disease and compromise in both his cervical and lumbar spine, causing radiculopathy with neuropathic symptoms in his extremities.  Plaintiff also recounts records from his other visits with Dr. Hoffman and later imaging.   Plaintiff further argues that the ALJ ignored findings from Dr. Wetherington that were consistent with Dr. Hoffman's opinion, and contends, in essence, that the ALJ placed too great an emphasis on Dr. Wetherington's finding that Plaintiff retained full strength.  Finally, Plaintiff argues that the ALJ's stated reasons for discounting Dr. Hoffman's opinion does not meet the minimum threshold, and therefore, the matter needs to be remanded so that the ALJ can provide a "more complete explanation" or "'break the tie' between persuasive opinions."  (ECF No. 15 at 10-11)

13

The undersigned concludes that the ALJ's decision provided sufficient reasons for discounting Dr. Hoffman's opinion.  First, there can be no doubt that the ALJ acknowledged Plaintiff's serious medical conditions, and referenced and considered all of the medical evidence Plaintiff relies on herein.  Second, and relatedly, the ALJ did not disregard Dr. Hoffman's various treatment notes and opinions.  "Rather, the ALJ reviewed all of the materials for a holistic view of [Plaintiff's] health.   The ALJ incorporated the doctors' various tests and analyses into a determination of [Plaintiff's] RFC."  Kraus v. Saul, 988 F.3d 1019, 1025 (8th Cir. 2021).  Third, the ALJ correctly noted that some of Dr. Hoffman's own findings and other records were inconsistent with the substantial limitations reflected in Dr. Hoffman's opinion.[2]  Finally, and significantly, the ALJ credited information from Dr. Wetherington, a neurosurgeon expert, who evaluated Plaintiff shortly before the administrative hearing, and examined Plaintiff at Dr. Hoffman's request.  Dr. Wetherington provided a comprehensive assessment that the ALJ could reasonable view as at odds with some of the significant limitations Dr. Hoffman enumerated in her MSS.  Dr. Wetherington found Plaintiff to have tenderness and a limited range of motion with his back, but also that he retained full strength.  And Dr. Wetherington recommended conservative

---

[2] Dr. Hoffman completed the MSS in June 2019.  In treatment notes dated July 22, 2019, and electronically signed by Dr. Hoffman on September 24, 2019, Dr. Hoffman notes that Plaintiff's hands, wrists, and knees were "unremarkable," and recommends a conservative course of treatment, beginning with epidural steroid injections followed by neurosurgery if steroids fail. (Tr. at 379)  A September 9, 2019, treatment note by Dr. Crawford, Plaintiff's primary care physician, indicated that Plaintiff's spine was "nontender to palpation" and his motor strength in his upper and lower extremities was intact.  (Tr. at 383)  A January 13, 2020 treatment note from Dr. Hoffman listed Plaintiff's hands and wrists as unremarkable and only "mild crepitus" in his knees, but also listed radiculopathy in Plaintiff's arms and lower extremities.  (Tr. at 397)  Dr. Wetherington's notes from January 28, 2020, however, indicate that Plaintiff denied "any radicular pain down the arms or any weakness."  (Tr. at 401)  Dr. Wetherington also noted that Plaintiff did "not show[] any significant signs of myelopathy," and recommended a relatively conservative course of treatment, starting with SI joint injections and discussed surgical options.  Plaintiff, however, advised that he wanted to discuss the issue with his family, primary care physician, and possibly seek a second opinion.  (Tr. at 405)

treatment.  Therefore, there is substantial evidence in the record to support the ALJ's decision to find Dr. Hoffman's opinion inconsistent with other evidence in the record.[3]  In fact, it was the most recent evidence available to the ALJ.  The substantial evidence standard precludes this Court from re-weighing the evidence.  See Schmitt v. Kijakazi, 27 F.4th 1353, 1361 (8th Cir. 2022) (citation omitted); Buckner, 646 F.3d at 556; McNamara, 590 F.3d at 610.

## II.  Assessment of Plaintiff's Subjective Complaints and Limitations

The ALJ found that Plaintiff's own statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical and other evidence in the record.  Plaintiff challenges this "credibility" assessment, arguing that (1) the assessment was defective due to the alleged error concerning the opinion evidence discussed above, and (2) the ALJ failed to account for Plaintiff's good work history.  The Commissioner counters that ALJ's decision demonstrates that the ALJ was aware of Plaintiff's work history.

Assessing a Social Security claimant's subjective complaints "is a matter properly within the purview of the ALJ."  Chaney v. Colvin, 812 F.3d 672, 676 (8th Cir. 2016) (citing Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003)).  The ALJ is not required to credit the claimant's subjective complaints when they are inconsistent with the record as a whole.  See Lawrence v. Saul, 970 F.3d 989, 995 n.6 (8th Cir. 2020); Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990).

---

[3] Although the ALJ's discussion of Dr. Wetherington's examination findings is somewhat brief, there is nothing in Dr. Wetherington's examination that, if included, would clearly undermine the ALJ's decision.  Thus, at best the ALJ's discussion reflects a harmless error and there is no reason for the Court to find that the ALJ would have decided the matter differently if the ALJ discussed the matter further.  See Vance v. Berryhill, 860 F.3d 1114, 1118 (8th Cir. 2017); Senne v. Apfel, 198 F.3d 1065, 1067 (8th Cir. 1999) ("[A] deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case."); Sloan v. Saul, 933 F.3d 946, 951 (8th Cir. 2019) ("The path of the agency's reasoning is clear enough to allow for appropriate judicial review.").

Plaintiff refers to this process as a "credibility" assessment, but in Social Security Rule 16-3p, the Commissioner largely eliminated the

> use of the term 'credibility' and clarifies that the Commissioner's review of subjective assertions of the severity of symptoms is not an examination of a claimant's character, but rather, is an examination for the level of consistency between the subjective assertions and the balance of the record as a whole…. [I]t largely changes terminology rather than the substantive analysis to be applied.

Lawrence, 970 F.3d at 995 n.6.  To make this assessment, the ALJ considers a variety of factors. See Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984) (listing factors); 20 C.F.R. § 404.1529(c)(3). But the ALJ is not required to explicitly discuss each factor.  See Schwandt v. Berryhill, 926 F.3d 1004, 1012 (8th Cir. 2019).

The Court has already concluded that substantial evidence supports the ALJ's consideration of the opinions in Dr. Hoffman's MSS.  So there was no alleged error in that regard would spill over and undermine the ALJ's assessment of Plaintiff's subjective complaints.

The fact that the ALJ did not give special weight to Plaintiff's work history does not undermine the ALJ's assessment of Plaintiff's subjective complaints in this case.  In fact, Plaintiff acknowledges even a strong work history is not necessarily entitled to extra weight or that a strong work history trumps other factors. (ECF No. 15 at 12)  The Court agrees with the Commissioner— the ALJ's decision makes clear that the ALJ was aware of the nature and extent of Plaintiff's work history,[4] and she considered all relevant evidence in the longitudinal record that supported and detracted from Plaintiff's subjective complaints.  The decision specifically noted that the ALJ considered the factors articulated in 20 C.F.R. 404.1529(c)(3).  This longitudinal record encompassed Plaintiff's activities of daily living and the entirety of the relevant medical record,

---

[4] First, at a minimum, the ALJ developed a record of Plaintiff's work history during the administrative hearing.  (See, e.g., Tr. at 48-49, 63)  Second, the ALJ extensively considered the nature of Plaintiff's past work at Steps 4 and 5.  (See Tr. at 34)

16

which also included notes that Plaintiff apparently supplied to his physician concerning his disability claim. The ALJ also considered that Plaintiff had "not required any inpatient or emergent treatment" since his onset date, and he did not need an "inordinate or excessive number of outpatient appointments." (Tr. at 33)

In short, the ALJ adhered to the regulations and considered the entire record. The record clearly demonstrates that the ALJ was aware of Plaintiff's work history, including the nature and circumstances of his past work. Therefore, substantial evidence supports ALJ's consideration of Plaintiff's subjective complaints. This Court is not at liberty to re-weigh the evidence. Schmitt v. Kijakazi, 27 F.4th 1353, 1361 (8th Cir. 2022) (citation omitted).

The fact that the ALJ did not specifically mention Plaintiff's work history in assessing his subjective complaints reflects, at most, harmless opinion-writing error. See Grindley v. Kijakazi, 9 F.4th 622, 631 (8th Cir. 2021) (explaining in the context of credibility assessment that a deficiency in opinion-writing does not provide a basis for reversal of an ALJ's decision); see also Widman v. Astrue, 596 F.3d 959, 968 (8th Cir. 2010); Goff v. Barnhart, 421 F.3d 785, 791 (8th Cir. 2005) (noting that it is ordinarily not error when an ALJ fails to explicitly discuss every credibility factor). The record as a whole supports the ALJ's conclusions. Therefore, the Court finds that the ALJ did not err in evaluating Plaintiff's subjective complaints.

**III.    Alleged Constitutional Defects**

Plaintiff argues that his hearing and the ALJ's decision in this matter occurred following the June 17, 2019, confirmation of Andrew Saul as the SSA Commissioner. Plaintiff refers to Seila Law, LLC v. CFFB, 140 S. Ct. 2183 (2020), in which the Supreme Court held that "it is unconstitutional for an executive Agency to be led by a single head who serves for a longer term than the President and can only be removed from [that] position for cause." [ECF No. 15 at 13]

Plaintiff argues that, pursuant to Seila Law, the "SSA's structure is unconstitutional as it violates separation of powers."  [Id.]  The government agrees that 42 U.S.C. § 902(a)(3) (the relevant provision) "violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause" [ECF No. 24 at 4], but contends that, pursuant to Collins v. Yellen, 141 S .Ct. 1761, 1787-89 (2021), "even where an unconstitutional statutory removal restriction exists, a plaintiff seeking relief on that basis must show that the restriction actually caused him harm."  Plaintiff has not made such a showing.  [ECF No. 24 at 5]

The Court finds that Plaintiff did not raise any separation of powers, delegation of authority, or similar constitutional claims in his Complaint.  Rather, he first identifies this claim in his Social Security Brief, and then in only two conclusory paragraphs.  Not until his Reply Brief does Plaintiff add any meat to the bones of this argument, at which point he acknowledges that: (1) the ALJ was properly appointed; and (2) the ALJ's decision occurred while President Trump was still in office.  In his Reply, Plaintiff shifts his focus to the Appeals Council decision, which occurred after President Biden took office, and he contends that President Biden wanted to remove former Commissioner Saul for "undermining and politicization of" the benefits process.  [ECF No. 25, Reply Brief at 4]  With that broad brush, Plaintiff leaps to the conclusion that President Biden's inability to promptly remove former Commissioner Saul, "went to the very fundamentals of the entire disability adjudication process," which had a "profound impact on the disability adjudication system."  [Id. at 5]

The Court need not consider this constitutional argument and will deny relief because Plaintiff's complaint did not comply with Rule 8—it failed to give any notice of the claim ultimately articulated in the reply brief.  See WireCo WorldGroup, Inc. v. Liberty Mut. Fire Ins. Co., 887 F.3d 987 (8th Cir. 2018) (declining to address claims not properly pleaded in the

complaint); see also Robinson v. Kijakazi, 2022 WL 443923 at *5 (E.D. Wisc. Feb. 14, 2022) (rejecting constitutional challenged to denial of benefits, based on 42 U.S.C. § 902(a)(3), because it was not alleged in the complaint) (citing Bowers v. Comm'r of Soc. Sec., 2022 WL 34401 (S.D. Ohio Jan. 4, 2022) (rejecting same separation of powers challenge)).  The arguments raised were available to Plaintiff at the time he filed his complaint and could have been identified sooner. Furthermore, as noted below, even on the merits, he has not articulated any identifiable harm or prejudice to him as a result of President Biden's reported inability to remove former Commissioner Saul in the interim between the ALJ's decision and the Appeals Council's decision.

Nonetheless, to make a more complete record, the Court will briefly address the merits of Plaintiff's constitutional claim because the Commissioner has responded to the claim.  In so doing, the undersigned has considered decisions from other Districts rejecting the same argument.  Like U.S. Magistrate Judge Dries in the Eastern District of Wisconsin, the Court holds that Petitioner's constitutional claim fails for at least three reasons.  See Robinson, 2022 WL 443923 at *5-7.

First, the argument at issue flows from Seila Law, and a majority of the Court in that case held that the removal protection provision was severable from the other provisions of the Act at issue.  Id. a *5 (citing Seila Law, 140 S. Ct. at 2207-11).  The same result should hold with respect to the Social Security Act, which does not include an inseverability clause.  Id. at *6.  Therefore, the remainder of the Social Security Act remains enforceable even "if the removal [protection] clause in § 902(a)(3) is erased."  Id. (citations omitted).  Second, and relatedly, "the unconstitutional removal clause in § 902(a)(3) does not automatically taint all actions taken by the SSA during [former Commissioner] Saul's tenure."  Id. (citing Collins, 141 S. Ct. at 1787).

Third, as alluded to above, Plaintiff has failed to show any meaningful "causal link between the unconstitutional removal clause in § 903(a)(3)" and the adjudication of his case.  Id.  Plaintiff

19

attempts to create a link by suggesting that former Commissioner Saul's policy choices were the reason that President Biden wanted to remove him, but Plaintiff does not plausibly allege that any such choices played any role in the agency action of which he now complains.

Plaintiff's constitutional challenge is not sustained.  The challenge is untimely, it was not mentioned in his complaint, it was only briefly mentioned in his opening brief, and not until his reply brief did he actually articulate the substance of his argument.  And, even if the merits of the argument are considered, it fails as a matter of law.

* * * * *

For the foregoing reasons, the Court finds that the ALJ's determination is supported by substantial evidence on the record as a whole.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **affirmed**.

*/s/ John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 7th day of July, 2022.

20